Junius J. Joyner, III, *pro se*
733 S. Hindry Avenue #206
Inglewood, CA 90301
(424) 352-6193
juniusj3@yahoo.com

IN THE UNITED STATES DISTRICT COURT

FOR THE

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUNIUS J. JOYNER, III**<br>**733 S. HINDRY AVE, #206**<br>**INGLEWOOD, CALIFORNIA 90301**<br><br>Plaintiff,<br><br>vs.<br><br>**UNITED STATES VETERANS INITIATIVE dba**<br>**U.S. VETS INGLEWOOD.**<br><br>Defendant. | Case No. 2:26cv 01313 JFW-AJR<br><br>**COMPLAINT FOR:**<br><br>**(1) DUE PROCESS VIOLATIONS**<br>**(U.S. CONST. AMEND. XIV)**<br><br>**(2) DEFAMATION PER SE**<br><br>**(3) BANE ACT VIOLATIONS**<br>**(CIV. CODE §52.1)**<br><br>**BENCH TRIAL REQUESTED** |

I.    **INTRODUCTION**

1. This is an action against Defendant for violating Plaintiff's constitutional and statutory rights arising from Defendant's attempt to summarily discharge Plaintiff from federally funded transitional housing based on false and unsubstantiated allegations, without notice or an opportunity to be heard.

II.    **PARTIES**

2. Plaintiff, Junius J. Joyner, III, *pro se,* is a veteran honorably discharged from the United States Air Force and a licensed member of the District of Columbia Bar Association in good standing for more than twenty years. At all relevant times, Plaintiff was a participant in

Defendant's federally funded transitional housing program and a resident of Los Angeles County, California ("Mr. Joyner").

3.  Defendant United States Veterans Initiative dba U.S. VETS Inglewood ("U.S. VETS" or "Defendant") is a non-profit corporation operating transitional housing programs for veterans pursuant to Title 38 U.S.C. § 2044 and Title 38 Code of Federal Regulations Part 62, requiring mandatory regulatory oversight and compliance by the United States Department of Veterans Affairs ("VA").

## III.    JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction exists under 28 U.S.C. § 1367.

5.  Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District and the events giving rise to this action occurred here.

## IV.    PROCEDURAL HISTORY

6.  On January 5, 2026, Mr. Joyner filed an action against U.S. VETS in this Court for violation of his due process rights under the Fourteenth Amendment to the United States Constitution and Defamation Per Se under California state law, Case No. 2:26-cv-00071-JFW-AJR.  On January 28, 2026, the Honorable A. Joel Richlin, United States Magistrate Judge, issued a Report and Recommendation On Request To Proceed In Forma Pauperis and recommended denying Mr. Joyner's motion.  This Court on February 6, 2026 agreed with the recommendation.  On February 6, 2026, Mr. Joyner, pursuant to Fed. R. Civ. P. 72(b)(2) filed his objection to Magistrate Judge Richlin's recommendation and also filed Fed. R. Civ. P. 60 (b)(1) Motion For Relief From Order to reopened the case.  This Complaint is filed parallel with Case No. 2:26-cv-00071-JFW-AJR to prevent any time-barred forfeiture to bring Mr. Joyner's state law Defamation Per Se claim within the statute of limitations while his Rule 60 motion is being considered by the Court.

2

## V.    FACTS

7.  On or about September 20, 2024, Mr. Joyner executed a Program Admission/Occupancy Agreement ("Occupancy Agreement") with U.S. VETS governing the terms of his residency and participation.

8. On February 10, 2025, U.S. VETS' case manager J.R. informed Mr. Joyner that an unnamed individual accused him of making a threatening statement toward his roommate. Mr. Joyner was told this accusation had been reported to the VA and that U.S. VETS intended to immediately discharge him from the program.

9. U.S. VETS refused to disclose the accuser's identity, provide written notice, produce evidence, or conduct any meaningful investigation. Mr. Joyner categorically denied the allegation and was informed by J.R. that his roommate was scheduled for discharge for violent conduct.

10.  U.S. VETS attempted to coerce Mr. Joyner into a counseling session as a condition to avoid summary removal, despite the absence of any finding of misconduct.

11.    On February 12, 2025, Mr. Joyner received a phone call from Veteran Service Manager L.C. informing him he needed to return immediately to the facility because he had been discharged from the transitional housing program.  Upon returning, Mr. Joyner was harassed initially by L.C., and later by Program Director K.K., both stating he had to immediately leave the premises because a complaint had been lodged against him for making threatening statements.

12.  U.S. VETS threatened Mr. Joyner stating police would be called if he did not immediately leave the premises.  When Mr. Joyner objected, L.C. stated Mr. Joyner was not the first to object and that he knew that when the police arrived Mr. Joyner would be escorted from the premises.

13.   Anticipating U.S. VETS would attempt to violate Mr. Joyner's due process rights, earlier

3

that morning Mr. Joyner filed an Ex Parte Motion in the Superior Court of California, County of Los Angeles County.  Upon learning of the filing, U.S. VETS reversed course and admitted staff knew Mr. Joyner was not a threat and that the accusation lacked credibility.   Mr. Joyner received a text message from U.S. VETS staff informing him he had been readmitted to the program.

14. On January 5, 2026, Mr. Joyner filed an action against U.S. VETS in this Court for violation of his due process rights under the Fourteenth Amendment and Defamation Per Se under California state law, Case No. 2:26-cv-00071-JFW-AJR.  Mr. Joyner sent U.S. VETS a Fed. R. Civ. P. Rule 4 (d) Waiver Request on January 12, 2026.

15. On January 26, 2026, Mr. Joyner received a Discharge Summary Notice from his case manager informing him had been discharged from the transitional housing program.  Mr. Joyner immediately objected to U.S. VETS action and sent an email to U.S. VETS executive staff citing lack of notice and due process, inaccurate factual accusations, and his concerns of retaliation and harassment as a result of the Complaint filed in this Court, attaching a copy of said Complaint.

16. On January 27, 2026, Mr. Joyner received an email from his case manager stating he had been reinstated into the program but was required to meet with executive leadership later that day.  At this meeting, Mr. Joyner was informed by S.C., Behavioral Health staff, that he was required to enter into a new Occupancy Agreement because changes had been made to the original agreement executed upon his arrival.  Mr. Joyner raised several legal objects to entering into a new agreement.  Upon review, Mr. Joyner learned that significant disclosures and protections contained in original agreement had been removed.   After objecting to execution of the new agreement, Mr. Joyner received two demand letters on January 28, 2026, stating that failure to sign the new agreement and change rooms would result in summary discharge.   Under protest, Mr. Joyner signed the new agreement and changed rooms.  After communicating his

objections to U.S. VETS' General Counsel, Mr. Joyner was again coerced on February 2, 2026 into signing another corrected agreement. Mr. Joyner expressly noted his legal objections when executing the revised agreement.

17. Title 38 U.S.C. § 2044 and Title 38 Code of Federal Regulations Part 62 mandate an ongoing collaboration between the Program Grantee, U.S. VETS, and the VA for case management services to meet the VA's goals and objectives to provide housing stability and to assist with obtaining any other public benefit from Federal, State, local, or tribal entity. Additionally, these statutes require collaboration between VA and U.S. VETS whereby participants must meet with a VA case manager counterpart, who is located on the U.S. VETS campus, upon initial enrollment and every 60-days thereafter until program completion.[1]

18. Furthermore, U.S. VETS operates its Low Demand, Clinical, Service-Intensive Therapy (SITH), and Bridge Housing programs pursuant to the VA's Grant and Per Deim (GPD) Program model requirements, under which VA funding is expressly conditioned for operation, enrollment, and reporting requirements. Program participants, without their consent, are enrolled into one of the four programs. These statutes and program structures establish i) constitutionally sufficient nexuses, ii) mutual benefits, iii) joint participation, and iv) financial entanglement rendering U.S. VETS conduct state action for purposes of Title 42 U.S.C. § 1983.

19. At all relevant times, the VA relied on U.S. VETS' representations and determinations concerning resident misconduct and housing status in administering veteran benefits and program eligibility, such that U.S. VETS' actions were intertwined with governmental enforcement and decision-making. VA continually collaborated with U.S. VETS in Mr. Joyner's case management from his initial entry into the program throughout his time at U.S. VETS including

---

[1] Relevant Title 38 Code of Federal Regulations Part 62 Supportive Services For Veterans Family Programs statutes are: §§ 62.22 (a)(5) and (a)(6); 62.30; 62.31; 62.32; 62.33; and 62.60 (b).

but not limited to his summary discharge in February 2025 and January 2026.

20.    U.S. VETS' failure to provide even minimal procedural protections has fostered an environment within its housing program in which Veterans Service Administrators wield the threat of discharge as a coercive tool, and program participants are incentivized to lodge unverified complaints against other veterans in the expectation that such accusations will result in immediate removal. Because no meaningful opportunity to be heard is afforded, allegations—regardless of merit—carry disproportionate and destabilizing consequences.

21.  This environment chills lawful conduct, undermines trust among participants, and places veterans at constant risk of arbitrary loss of housing. Mr. Joyner was able to avert permanent harm only because of his legal training and ability to seek emergency judicial intervention; absent such intervention, Mr. Joyner would have suffered the same fate as other program participants subject to summary discharge without due process.

## VI. LIABILITY

### A.  FIRST CAUSE OF ACTION – 14TH AMEND DUE PROCESS VIOLATION (42.U.S.C §1983)

22. Paragraphs 7-21 are repeated, realleged and incorporated here by this reference.

23. To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege a protected liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  A property interest exists where a person has a legitimate claim of entitlement arising from rules, contracts, or mutually explicit understandings that limit the discretion of the decision-maker. *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972).  The Fourteenth Amendment applies to deprivations of property or liberty by persons acting under color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

24.   Defendant, acting under color of state law, deprived Plaintiff of a protected property interest in continued housing and program participation without notice or an opportunity to be heard, in

6

violation of the Fourteenth Amendment.

25. Defendant's conduct constituted a complete denial of procedural safeguards required by the Constitution, including advance notice of non-compliance, an opportunity to cure any defect, and a meaningful opportunity to respond prior to deprivation of rights.

26. As a direct and proximate result of Defendant's Fourteenth Amendment violations, Plaintiff suffered constitutional injury, exposure to immediate risk of homelessness, emotional distress, reputational harm, and disruption of housing security, entitling him to relief under 42 U.S.C. § 1983.

**B. SECOND CAUSE OF ACTION – DEFAMATION**

27. Paragraphs 7-21 are repeated, realleged and incorporated here by this reference.

28. The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.

29. U.S. VETS' disclosure or publication to the VA of unsubstantiated outrageous allegations that were false, extremely defamatory, and unprivileged had a natural tendency to damage Mr. Joyner's reputation.

30. U.S. VETS owed Mr. Joyner a duty to exercise reasonable care in vetting allegations before communicating them to the VA. U.S. VETS was not a passive recipient of information, but an intermediary entrusted with discretionary authority over Mr. Joyner's housing status and official communications affecting Mr. Joyner's eligibility for federally funded veteran services. Where a defendant knows that unverified accusations, if reported, will foreseeably jeopardize housing, benefits, and reputation, California law imposes a duty to investigate before publication. See *Brown v. Kelly Broadcasting Co.*, 48 Cal. 3d 711, 747 (1989); *Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 275 (1998).

31. U.S. VETS breached this duty by reporting allegations it knew were uncorroborated and

7

lacked indicia of reliability, without interviewing witnesses, and without conducting any meaningful inquiry.  U.S. VETS actions were reckless.   U.S. VETS is directly and proximately liable for causing the publication of this false and highly defamatory statement that caused Mr. Joyner extreme mental anguish and damage to his personal and professional reputation.  Mr. Joyner seeks non-economic and punitive damages for the reckless and malicious disclosure of unsubstantiated statements that  U.S. VETS knew or should have known lacked credibility.

**C.  THIRD CAUSE OF ACTION – VIOLATION OF BANE ACT (CIV. CODE §52.1)**

32. Paragraphs 7-21 are repeated, realleged and incorporated here by this reference.

33. To plead a cause of action under the §52.1, the plaintiff must show "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67, 183 Cal.Rptr.3d 654.

34. Defendant intentionally interfered with, and attempted to interfere with, Plaintiff's constitutional and statutory rights, including his rights to procedural due process, housing security, and freedom from arbitrary governmental deprivation, by means of threats, intimidation, and coercion. Defendant repeatedly threatened Plaintiff with immediate removal from federally funded housing, involvement of law enforcement, and loss of access to VA-administered benefits unless Plaintiff complied with demands unsupported by any finding of misconduct, including forced counseling, immediate departure from the premises, and execution of revised Occupancy Agreements under threat of summary discharge.

35.  Defendant's conduct was willful, deliberate, and coercive. Defendant leveraged Plaintiff's dependence on housing stability and VA-connected services to compel compliance, including threatening police intervention, effectuating summary discharge without notice, and conditioning

continued housing on execution of materially altered agreements. Such conduct was intended to deter Plaintiff from asserting his legal rights and to punish Plaintiff for objecting to unlawful procedures and for filing litigation.

36. Defendant's threats, intimidation, and coercive acts were part of a continuing course of conduct occurring in February 2025 and again in January and February 2026, demonstrating a pattern of using discharge authority as a tool of retaliation and suppression rather than for legitimate program enforcement. Plaintiff's reinstatement only after judicial intervention further evidences Defendant's misuse of coercive power.

## VII.    DAMAGES & RELIEF

### A.  FIRST CAUSE OF ACTION – 14TH AMEND DUE PROCESS VIOLATION (42.U.S.C §1983)

37.   As a direct and proximate result of U.S. VETS' deprivation of procedural due process, Mr. Joyner suffered compensable constitutional injury, including the loss of legally required procedural protections governing continued housing, exposure to immediate risk of homelessness, and the resulting disruption of housing security. Even where housing termination is ultimately halted, the denial of due process itself constitutes a cognizable injury under 42 U.S.C. § 1983. See *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978).

38.   Mr. Joyner seeks declaratory relief pursuant to 28 U.S.C. § 2201 declaring that U.S. VETS' practice of summarily discharging residents and reporting unverified allegations to the VA without notice, investigation, or opportunity to be heard violates the Fourteenth Amendment.

39. Mr. Joyner further seeks prospective injunctive relief prohibiting U.S. VETS from: (a) reporting allegations of resident misconduct to the VA without reasonable investigation; and (b) initiating discharge proceedings absent advance written notice and a meaningful opportunity to respond. Such relief is necessary to prevent ongoing and future violations of constitutional rights.

40. Mr. Joyner seeks non-economic damages for loss of housing security and constitutional

9

injury, in an amount not to exceed $250,000, a sum proportionate to the harm suffered and consistent with the remedial purposes of § 1983. In the alternative, Mr. Joyner seeks nominal damages to vindicate the violation of his constitutional rights.

**B. SECOND CAUSE OF ACTION – DEFAMATION**

41. U.S. VETS' statements falsely accusing Mr. Joyner of threatening conduct constitute defamation per se under California law, as they impute dangerous behavior incompatible with participation in veteran housing programs and foreseeably impair Mr. Joyner's reputation, housing eligibility, and standing with the VA. See *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003).

42. Because the statements are defamatory per se, damages are presumed, and Mr. Joyner is not required to plead or prove special damages. Nevertheless, Mr. Joyner suffered actual harm, including reputational injury, loss of trust by program administrators, and the disruption of housing stability.

43. Mr. Joyner further suffered non-economic harm arising from the serious and immediate risk of losing housing and access to veteran services caused by U.S. VETS' publication of unverified accusations. California law recognizes that injury to reputation and housing security constitutes real and compensable harm.

44. Mr. Joyner seeks punitive damages pursuant to California Civil Code § 3294 based on U.S. VETS' conscious disregard of Mr. Joyner's rights, including knowingly reporting unverified allegations without investigation and despite awareness of the severe consequences to Mr. Joyner.

45. Mr. Joyner expressly seeks punitive damages in an amount sufficient to deter similar misconduct and to encourage lawful handling of allegations affecting veterans' housing and benefits, while remaining mindful that U.S. VETS receives public funding intended to serve

10

veterans. Mr. Joyner does not seek an award that would impair U.S. VETS' ability to provide services, but rather one that ensures accountability and compliance with constitutional and legal obligations.

46. Accordingly, Mr. Joyner seeks punitive damages not to exceed $250,000, an amount proportionate to the misconduct alleged and consistent with due process and public policy considerations.

## C. THIRD CAUSE OF ACTION – VIOLATION OF BANE ACT (CIV. CODE §52.1)

47. As a direct and proximate result of Defendant's violations of the Bane Act, Plaintiff suffered economic damages, including disruption of employment opportunities, increased costs associated with legal intervention to prevent homelessness, and interference with access to veteran services; non-economic damages, including severe emotional distress, anxiety, humiliation, and loss of housing security; and constitutional injury arising from Defendant's repeated use of threats and coercion to suppress Plaintiff's exercise of protected rights. Defendant's conduct was oppressive, malicious, and undertaken in reckless disregard of Plaintiff's rights, entitling Plaintiff to enhanced statutory and punitive damages pursuant to Civil Code § 52.1 and § 3294.

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

**A.** **COUNT I & II** - Bench trial on all triable issues;

**B.** **COUNT I** – For Declaratory Relief pursuant to 28 U.S.C. § 2201 declaring that Defendant's practices and conduct alleged herein—specifically, initiating discharge proceedings and communicating allegations to the VA without reasonable investigation, notice, or an opportunity to be heard—violated Plaintiff's rights to procedural due process under the Fourteenth Amendment; for prospective Injunctive Relief prohibiting Defendant from engaging in the unconstitutional practices alleged herein, including but not limited to reporting unverified

11

allegations of resident misconduct to the VA and initiating discharge proceedings without constitutionally adequate procedural safeguards; and non-economic damages for loss of housing security and constitutional injury, in an amount not to exceed $250,000, a sum proportionate to the harm suffered and consistent with the remedial purposes of § 1983. In the alternative, Mr. Joyner seeks nominal damages to vindicate the violation of his constitutional rights;

C.    **COUNT II** - For compensatory and non-economic damages to determined at trial, including damages for reputational harm and emotional distress, in an amount to be determined at trial; and for punitive damages pursuant to California Civil Code § 3294, in an amount to be determined at trial, sufficient to punish and deter Defendant's reckless and conscious disregard of Plaintiff's rights, while remaining proportionate and mindful that Defendant receives public funding intended to serve veterans, such that any award serves accountability and deterrence rather than impairment of veteran services; and

D.    **COUNT III** – For compensatory damages, including economic and non-economic damages, in an amount to be determined at trial; for statutory damages as authorized by Civil Code § 52.1; for punitive damages based on Defendant's willful, oppressive, and malicious conduct, in an amount sufficient to punish and deter repeated egregious violations of constitutional rights; and for injunctive relief prohibiting Defendant from using threats, intimidation, or coercion to compel compliance with unlawful discharge procedures or to retaliate against residents for asserting protected rights.  Plaintiff seeks compensatory (economic and non-economic), statutory damages as authorized by law, in an amount not to exceed $250,000, a sum proportionate to Defendant's willful and coercive misconduct and sufficient to deter future violations, while remaining mindful that Defendant is publicly funded provider of veterans housing services.

E.    For such other and further relief as the Court deems just, proper, and equitable.

///

12

Dated:  February 9, 2026.

Junius J. Joyner, III
Plaintiff, *pro se*
Inglewood, CA 90301
juniusj3@yahoo.com
(424) 352-6193

13